**NOT FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X

In Re:                                                              Chapter 7

MICHAEL NACINOVICH and DEBORAH
ANN NACINOVICH,                                         Case No.: 12-30874 (MBK)


                    Debtors.
---------------------------------------------------------X

MICHAEL NACINOVICH,

                    Plaintiff,                                   Adversary No.: 13-1074 (MBK)
       v.

HOLIDAY CITY AT BERKELEY
SHAREHOLDERS CORPORATION,

                    Defendant.
---------------------------------------------------------X

APPEARANCES:

**Mary Beth Schroeder, Esq.**
Law Office of Lee Gottesman
509 Main St., PO Box 1508
Toms River, NJ 08754
Attorney for Debtor Michael Nacinovich

**Gregory X. Voorhees, Esq.**
Leodori & Voorhees PC
61 Union St., 2nd Fl.
Medford, NJ 08055
Attorney for Holiday City at Berkeley Shareowners Corporation (improperly pled as Holiday City at Berkeley Shareholders Corporation)


**MICHAEL B. KAPLAN, U.S.B.J.**


**MEMORANDUM DECISION**

## I. Introduction

The instant Adversary Proceeding was filed by Plaintiff, Debtor ("Plaintiff") based upon allegations that Defendant, Holiday City at Berkely Shareowners Corporation ("Holiday City") attempted to collect a debt from Plaintiff which had been previously discharged. On April 4, 2013, the Plaintiff filed a Motion for Summary Judgment ("Motion"). On April 22, 2013, Holiday City filed an Opposition and Cross Motion for Summary Judgment ("Cross Motion") seeking a ruling in its favor. The Court has reviewed the pleadings submitted and entertained oral argument on April 29, 2013. Additionally, supplemental briefing was permitted and considered. The Court issues the following ruling:

## II. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(K) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Background

On August 23, 2012, Plaintiff, together with his wife, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Petition filed by the Plaintiff listed Holiday City as a creditor in connection with unpaid maintenance fees relating to non-residential real property located in an age-restricted senior community operated by Holiday City. The property was abandoned by the Trustee on October 27, 2012 and Plaintiff and his wife received an Order of

Discharge from the Court on November 30, 2012.

On or about November 21, 2012, the Plaintiff received a billing statement from Holiday City which listed outstanding charges in the amount of $2,290.00. Thereafter, the Plaintiff filed the adversary proceeding arguing that Holiday City's remittance of the statement amounts to an *in personam* attempt to collect an underlying pre-petition debt in violation of the automatic stay. Holiday City contends that it made no attempt to collect, but that it merely supplied an updated status ledger reflecting the balance of the assessments remaining unpaid.

In addition, Holiday City states that it recorded a lien against the property in question on May 18, 2009 in the amount of $570.00. *See Attachment to Certification of Counsel*, Docket Entry No. 6-2 at *4. Holiday City therefore asserts that it was permitted to take action to recover its lien against the property after it was abandoned. In light of the fact that the property was abandoned on October 27, 2012, Holiday City contends that it permissibly provided an updated ledger of outstanding maintenance assessments to the Plaintiff on November 21, 2012. Holiday City further asserts that it is a secured creditor and that it remains permitted to collect upon its liens on the property.

The Court notes that the amount listed on the updated billing statement, $2,900.00, is significantly higher than the amount of the recorded lien, $570.00. As a result, during oral argument on this matter the Court questioned the reason for this discrepancy. Counsel for Holiday City explained that the increase was due to fees and assessments which accrued as a result of additional missed payments. The Court requested supplemental briefing on this issue, which Holiday City provided. In its supplemental brief, Holiday City contends that, "in addition to the May, 2009 recorded lien on the Property, Holiday City carries an automatic lien on the Property upon the failure to pay maintenance assessments pursuant to the recorded December

3

23, 1969 Declaration of Covenants and Restrictions." *Holiday City's Brief in Further Support of Motion for Summary Judgment*, Docket Entry No. 7, \*5.

For the reasons that follow, the Court finds that Holiday City possesses a lien on the property for the full amount of the outstanding indebtedness and, accordingly, the automatic stay pursuant to 11 U.S.C. § 362(a) does not proscribe efforts by Holiday City to pursue collection of its *in rem* claim. The Court will grant summary judgment in favor of Holiday City.

### IV.  Discussion

As an initial matter, the Court determines that the remittance of the billing statement to the Plaintiff does, in fact, constitute a collection attempt on behalf of Holiday City. There could be no purpose for the letter other than to remind the Plaintiff of his alleged obligation to elicit payment. However, the inquiry does not end here. Holiday City holds a recorded lien on the property in the amount of $570.00. As a result, Holiday City is permitted to pursue an *in rem* action against the collateral in that amount. Had the billing statement sent to the Plaintiff reflected only the amount of the recorded lien, submission of same clearly would not be a violation of the automatic stay. However, Holiday City presented to the Plaintiff a billing statement which claimed an amount greater than the amount of the recorded lien. Therefore, remittance of the letter could be deemed an impermissible attempt to collect on the difference if Holiday City does not possess a valid lien on the additional amount.

If it is determined that Holiday City's lien is limited to the amount of the recorded lien, as alleged by the Plaintiff, then the additional fees included in the billing statement are unsecured and pursuit of them in any form constitutes a violation of the automatic stay. If, however, Holiday City holds a lien against the property in the full amount of the billing

statement, as alleged by Holiday city, then that full amount remains a valid *in rem* claim and remittance of the billing statement reflecting that full amount is not a violation of the automatic stay since such action occurred after the abandonment of the property by the Chapter 7 Trustee. Therefore, the outcome of the pending summary judgment motions, and the outcome of the entire adversary proceeding, will turn on whether Holiday City possesses a lien limited to the amount of the recorded lien, or in the amount of the recorded lien plus accrued fees and assessments.

Holiday City points to its recorded Declaration of Covenants and Restrictions dated December 23, 1969 as the document which controls this issue. Indeed, the language of this document dictates that non-payment of assessments, together with interest and cost of collection, shall constitute a continuing lien on the property. The Court must determine whether to enforce the terms of this document.

The Court first looks to the nature of the residential development known as Holiday City. It is a common interest housing subdivision, managed by a homeowners association, which is governed by its own, privately created set of rules.

> Homeowners associations in common interest developments (as opposed to condominiums) do not arise out of a statute. *Highland Lakes Country Club & Cmty. Ass'n v. Franzino,* 186 *N.J.* 99, 110, 892 *A.*2d 646 (2006). A homeowners association is created by filing a "declaration of covenants, conditions and restrictions contained in deeds and association bylaws." *Ibid.* The covenants include restrictions and conditions that run with the land and \*\*167 bind all current and future property owners. *Ibid.* The bylaws set forth rules and regulations governing the association's members. *Id.* at 111, 892 *A.*2d 646.

*Cape May Harbor Village and Yacht Club Ass'n, Inc. v. Sbraga,* 421 N.J. Super. 56, 69-70 (App. Div. 2011).[1]

Although those who purchase properties subject to the rules of a homeowners association forego certain liberties, they receive benefits in exchange:

> Restrictive covenants are used to maintain or enhance the value of land by reciprocal undertakings that restrain or regulate groups of properties. These covenants are common in condominium and other "common-interest" housing subdivisions. Prior to selling the first unit or plat, the subdivision or condominium owner creates a declaration or master deed that contains all of the restrictions. Property owners who purchase their properties subject to such restrictions give up a certain degree of individual freedom in exchange for the protections from living in a community of reciprocal undertakings.

*Sbraga,* 421 N.J. Super. at 71 (*quoting Villas W. II of Willowridge Homeowners Ass'n, Inc. v. McGlothin,* 885 N.E. 2d 1274, 1278–79 (Ind. 2008), *cert. denied,* ––– U.S. –––, 129 S.Ct. 1527 (2009) (citation and footnote omitted). Consequently, the Plaintiff in this case received certain protections and benefits by subjecting himself to the bylaws contained in

---

[1] This Court notes that the *Sbraga* court concedes that, although other common interest developments are not necessarily governed by the Condominium Act, in certain circumstances, "the Act is considered instructive and is used for guidance." *Id.* at 70 (*citing Mulligan v. Panther Valley Property Owners Ass'n*, 337 N.J.Super. 293, 301 (App. Div. 2001) and *State v. Panther Valley Prop. Owners Ass'n,* 307 N.J.Super. 319, 322, (App. Div. 1998)). In the circumstances of this case, however, the Court determines that instruction and/or guidance from the Condominium Act is not necessary. The terms of Holiday City's Declaration of Covenants and Restrictions are clear and specifically address the set of facts present in this case; namely, non-payment of assessments and subsequent accrual of interest and fees. Neither party has challenged the validity or reasonableness of the terms of Holiday City's Declaration of Covenants and Restrictions; therefore, it is controlling as to the issue before the Court.

Holiday City's Declaration of Covenants and Restrictions. It logically follows, therefore, that the Plaintiff should be held to the terms to which he agreed when he purchased the property in question. Additionally, the Plaintiff has not argued that the terms of Holiday City's Declaration of Covenants and Restrictions are unreasonable or unfair. The Court declines to explore this possibility *sua sponte* and notes that the Plaintiff did not submit a supplemental brief despite being afforded the opportunity to do so.

Further buttressing the Court's decision to apply the rules established by the homeowners association is the fact that the section of the Declaration of Covenants and Restrictions relevant to this issue is not a recent amendment to the document. Plaintiff was, therefore, on notice of these provisions. When deciding whether enforcement of a particular restraint in a covenant is appropriate, "some courts have noted a distinction between covenants that were originally recorded, which were 'extant at the time of purchase,' and 'later-adopted ones'" and give greater weight to those in place at the time of purchase. *Sbraga*, 421 N.J.Super. at 72 (*quoting Mulligan*, 337 N.J.Super. at 302, 766 A.2d 1186 (*citing Ridgely Condo. Ass'n, Inc. v. Smyrnioudis*, 105 Md.App. 404, 660 A.2d 942, 948 (1995), aff'd, 343 Md. 357, 681 A.2d 494 (1996))). Holiday City certifies that the Declaration of Covenants and Restrictions was provided to the Plaintiff at the time of purchase. *Holiday City's Supplemental Brief*, Docket Entry No. 7 at *8. Given that the Plaintiff chose to purchase the property subject to the regulations outlined in the Declaration of Covenants and Restrictions, greater weight can be afforded to the terms of that covenant.

Finally, the Court finds that the recordation of Holiday City's Declaration of Covenants and Restrictions establishes a fully enforceable lien against the Plaintiff's property for the full amount of the unpaid assessments and fees. Numerous courts in this jurisdiction have held that

7

the mere act of recording such a declaration of covenants is sufficient to establish a valid lien and subsequent purchasers of the property are put on constructive notice of the lien simply by way of the declaration's recordation.  30 MYRON C. WEINSTEIN, NEW JERSEY BAR ASS'N, NEW JERSEY PRACTICE SERIES, LAW OF MORTGAGES: CONDOMINIUM ASS'N LIENS AND HOMEOWNERS ASS'N LIENS § 26 (2d ed. 2012) (*citing Leisuretowne Association v. McCarthy*, 193 N.J.Super. 494 (App. Div. 1984); *Rittenhouse Park Community Association v. Katznelson,* 223 N.J.Super. 595 (Ch. Div. 1987); *Highland Lakes Country Club & Community Ass'n v. Franzino*, 186 N.J. 99, 120 (2006)).  Community developments which are not subject to the Condominium Act, such as the homeowners association in this case, are not required to record liens for unpaid assessments so long as the declaration of covenants governing the property, which provides for the creation of the lien, has been properly recorded.  *Rittenhouse Park Community Association v. Katznelson*, 223 N.J.Super. 595, 599 (Ch. Div. 1987).  In this case, Holiday City's Declaration of Covenants and Restrictions was recorded with the Ocean County Clerk's Office on December 23, 1969 and its terms provide for the creation of a lien upon failure to pay assessments. Therefore, Holiday City possessed a valid lien against the property automatically upon the Plaintiff's failure to pay and was under no obligation to record same; nor is Holiday City under a continuing obligation to record liens for future missed payments.  The fact that Holiday City did at one point record a lien with the county is mere surplusage.  *Id.*

A common sense analysis further supports enforcement of Holiday City's Declaration of Covenants and Restrictions and a finding that a valid lien exists although it has not been recorded.  As Holiday City points out, requiring a homeowners association to record a new lien with each missed payment would dramatically increase the costs incurred in pursuing a debt. Indeed, this notion may have been the logic inspiring the case law discussed above and the

impetus for homeowners associations to include clauses which create automatic liens in their declaration of covenants. Regardless, the fact that Holiday City's properly recorded Declaration of Covenants and Restrictions affords a continuing lien for missed payments explains Holiday City's failure to record subsequent liens and justifies their submission of a billing statement which reflects an amount in excess of the recorded lien.

For the reasons discussed, the Court shall enforce the homeowners association's bylaws. As a result of the Plaintiff's failure to pay pre-petition assessments and fees, Holiday City acquired a lien against the property by virtue of the terms of the Declaration of Covenants and Restrictions which was recorded with the county on December 23, 1969. Thus, the remittance of a billing statement which reflected an amount greater than the amount of the recorded lien was not an improper attempt to collect a debt in violation of the automatic stay.

### V. Conclusion

For the reasons set forth above, the Plaintiff's Motion **DENIED** and Holiday City's Cross Motion is **GRANTED.** Counsel for Holiday City is directed to submit an Order consistent with the Court's ruling.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: May 31, 2013